No. 22-16110

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

AARON GREENSPAN,

*Plaintiff-Appellant,*

v.

OMAR QAZI,
SMICK ENTERPRISES, INC.,
ELON MUSK,
TESLA, INC.,

*Defendant-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
Civil Case No. 3:20-cv-03426-JD
Hon. James Donato

---

**APPELLANT'S OPENING BRIEF**

---

Aaron Greenspan, *pro se*
956 Carolina Street
San Francisco, CA  94107-3337
+1 415 670 9350
aaron.greenspan@plainsite.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule

26.1, Plaintiff-Appellant makes the following disclosures:

Plaintiff-Appellant Aaron Greenspan is a natural person. As such, a

corporate disclosure statement is not required. FED. R. APP. P. 26.1(a).

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ................................................................................ ii

INTRODUCTION .......................................................................................... 1

JURISDICTION ............................................................................................ 4

STATEMENT OF THE ISSUES .................................................................... 5

CIRCUIT RULE 28-2.7 STATEMENT ......................................................... 5

STATEMENT OF THE CASE ....................................................................... 6

I.    Tesla, Inc. Achieved Its $1.2 Trillion Valuation By Waging A Campaign Of Internet Harassment Against Journalists And Short-Sellers ......................... 6

II.   Publicly Traded Corporations Have Been Shielded From Accountability For Securities Fraud By The PSLRA, A Law That Is At Least Partially Nullified By 28 U.S.C. § 2072(b) ................................................................... 11

III.  Proceedings in District Court ........................................................ 13

SUMMARY OF THE ARGUMENT .............................................................. 14

ARGUMENT ................................................................................................ 16

I.    The PSLRA Conflicts With The Federal Rules of Civil Procedure, Rendering At Least Part Of The PSLRA "Of No Further Force Or Effect" ................................................................................................ 16

    A.    Standard of Review ............................................................. 16

    B.    The Rules Have Been Revised And Made Effective Repeatedly Since The PSLRA Was Signed Into Law On December 22, 1995, Rendering The PSLRA Of No Further Force Or Effect ............................ 16

    C.    The PSLRA And Numerous Federal Rules Of Civil Procedure Concerning Discovery Cannot Be Reconciled ................................... 19

    D.    The PSLRA And Federal Rules Of Civil Procedure 8 and 9(b) Cannot Be Reconciled ......................................................... 22

II.   The Qazi Defendants Are Not Entitled To A Fair Use Defense On Plaintiff's Copyright Claim And The Factors Disqualify It Anyway ......................... 25

    A.    Standard of Review ............................................................. 25

B.     The District Court Never Addressed Plaintiff's Actual Arguments Concerning Fair Use .................................................................. 26

C.     Supreme Court Precedent Precludes "Fair Use" In Cases Where Bad Faith Can Be Demonstrated ................................................. 27

D.     The Fair Use Factors Weigh Heavily Against Defendants, Who Conceded Acting In Bad Faith ............................................... 29

        1.     Purpose and Character ............................................ 30

        2.     Nature of the Copyrighted Work ............................. 31

        3.     Amount and Substantiality of the Portion Used ..................... 31

        4.     Effect of the Use Upon the Potential Market ........................... 33

III.    The District Court Erred By Failing To Grant Relief Under Rule 60(b) ..... 34

A.     The District Court Ignored Material New Evidence ......................... 34

B.     The District Court Erred By Refusing To Acknowledge That Omar Qazi Is At Least An Ostensible Agent of Tesla, Inc. ........................ 35

C.     The District Court's Rulings Contradict Related Court Rulings ....... 38

D.     The District Court Was Not Impartial ................................................ 40

CONCLUSION ...................................................................................... 41

STATEMENT OF RELATED CASES .................................................. 42

ADDENDUM ..................................................................................... A-1

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
5 F.3d 378, 383 (9th Cir. 1993) ........................................................ 16

*Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1166 (9th Cir.1998)......... 16

*American Casualty Co. of Reading, PA. v. Krieger*,
181 F. 3d 1113, 1121 (9th Cir. 1999) ............................................... 37

*Auto Auction, Inc. v. Riding Motors*,
187 Cal. App.2d 693, 10 Cal.Rptr. 110, 113-14 (1960) .................................. 37

*BDO USA, LLP v. EverGlade Global, Inc.*,
C.A. No. 2021-0244-KSJM at 10-11 (Del. Ch. January 5, 2022) .................... 39

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994) ............................. 31

*CAR Transp. Brokerage v. Darden Restaurants*,
213 F. 3d 474, 480 (9th Cir. 2000) .................................................. 37

*Conservation Force v. Salazar*, 677 F. Supp. 2d 1203 (N.D. Cal. 2009).............. 30

*Correa v. Quality Motor Co.*, 118 Cal. App.2d 246, 257 P.2d 738, 741 (1953) .... 37

*Federal Trade Commission v. AH Media Group, LLC et al*,
Case No. 3:19-cv-04022-JD (N.D. Cal. November 1, 2021) ........................... 38

*Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 532 (S.D.N.Y. 2018) ...... 28

*Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021) ..................... 25, 28

*Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 849 (7th Cir. 2012) .................... 17

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985) ...................................................... 25, 27, 32, 33

*In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1105 (C.D. Cal. 2007) ........... 20

*In re DMCA Subpoena to Reddit, Inc.*,
441 F. Supp. 3d 875, 884-85 (N.D. Cal. 2020) .................................. 27

*In Re Tesla Sec. Litig.*,
Case No. 3:18-cv-04865-EMC at 24 (N.D. Cal. April 1, 2022)...................... 40

*In Re Viagra (Sildenafil Citrate)*, 424 F. Supp. 3d 781, 789 (N.D. Cal. 2020) ...... 17

*Iremashvili v. Rodriguez*,
Case No. 2:15-cv-06320-CCC at 4 (D.N.J. March 9, 2017) ............................ 18

*Kaplan v. Coldwell Banker Residential Affiliates, Inc*.,
59 Cal.App.4th at 747, 69 Cal.Rptr.2d at 643 (1997) ........................................ 37

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F. 3d 347, 350 (9th Cir. 1999) ....................................................................................................... 34

*Lazar v. Kroncke*, 862 F. 3d 1186, 1193 (9th Cir. 2017) ........................................ 16

*Leadsinger, Inc. v. BMG Music Pub*., 512 F. 3d 522 (9th Cir. 2008) ................... 26

*Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982) ....................... 34

*Locricchio v. Office of U.S. Trustee*, 313 Fed. Appx. 51, 52 (9th Cir. 2009) ......... 30

*Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir. 1983) ........................................ 28

*Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) ................. 20

*Nat. Union Fire Ins. Co. v. Seafirst Corp*., 891 F.2d 762, 765 (9th Cir.1989) ....... 16

*Penfleld Co. of Cal. v. SEC*, 330 U.S. 585, 589 n.5 (1947) .................................... 17

*Planned Parenthood v. Center for Medical Prog*.,
890 F. 3d 828, 833-834 (9th Cir. 2018) ............................................................. 21

*Republic Tobacco Co. v. N Atl. Trading Co*., 481 F.3d 442, 448 (2d Cir. 2007) ... 17

*SG Cowen Securities Corp*., 189 F.3d 909, 911 (9th Cir. 1999) ............................ 20

*Silvers v. Sony Pictures Entm't, Inc*., 402 F.3d 881, 883 (9th Cir. 2005) .............. 26

*Stebbins v. Rebolo*, Case No. 4:22-cv-00546-JSW (N.D. Cal. July 11, 2022) ....... 28

*Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 515 .................................................. 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*.,
551 U.S. 308, 127 S.Ct. 2499 (2007) ..................................................... 22, 23, 24

*Tomerlin v. Canadian Indem. Co*.,
61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571, 575 (1964) ............................. 37

*United States ex rel. Newsham v. Lockheed Missiles & Space Co*.,
190 F.3d 963, 972 (9th Cir. 1999) ..................................................................... 24

*United States v. Est. of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011) .................... 16

*United States v. Kim*, 298 F. 3d 746, 749 (9th Cir. 2002) ...................................... 25

*United States v. Sears, Roebuck & Co., Inc.*, 785 F. 2d 777, 778 (9th Cir. 1986) . 41

*Unsworth v. Musk*,
  Case No. 2:18-cv-08048-SVW-JC at 11 (C.D. Cal. May 10, 2019) ................ 39

*Z.F. v. Ripon Unified School District*, 482 Fed. Appx. 239, 240 (9th Cir. 2012) .. 21

## Statutes

15 U.S.C. § 78aa ........................................................................................... 4

15 U.S.C. § 78j(b) ........................................................................................ 4

15 U.S.C. § 78t(a) ........................................................................................ 4

15 U.S.C. § 78u-4(b) ................................................................................... 24

15 U.S.C. § 78u-4(b)(1) .............................................................................. 22

15 U.S.C. § 78u-4(b)(2)(A) ......................................................................... 22

15 U.S.C. § 78u-4(b)(3)(B) ......................................................................... 19

17 U.S.C. § 107 ........................................................................................... 28

17 U.S.C. § 1202(b) ................................................................................... 13

18 U.S.C. § 1623(d) .............................................................................. 3, 38

28 U.S.C. § 1291 .......................................................................................... 4

28 U.S.C. § 1331 .......................................................................................... 4

28 U.S.C. § 1337 .......................................................................................... 4

28 U.S.C. § 1338(a) ..................................................................................... 4

28 U.S.C. § 2072 ....................................................................... 5, 17, 21, 25

28 U.S.C. § 2072(b) .............................................................................. passim

California Code of Civil Procedure § 425.16 ....................................... 26

California Code of Civil Procedure § 425.16(f) .................................... 20

California Code of Civil Procedure § 425.16(g) ................................... 20

Digital Millennium Copyright Act ............................................. 4, 13, 14

Private Securities Litigation Reform Act ....................................... passim

Securities Exchange Act of 1934 .................................................... 4

**Regulations**

17 C.F.R. § 240.10b-5 ........................................................................ 4

**Rules**

Federal Rule of Civil Procedure 4 ..................................................... 17

Federal Rule of Civil Procedure 8 ....................................... 11, 12, 24

Federal Rule of Civil Procedure 9(b)............................ 11, 12, 23, 24

Federal Rule of Civil Procedure 15(a)(1)(B) ..................................... 13

Federal Rule of Civil Procedure 26 ....................................... 19, 20, 21

Federal Rule of Civil Procedure 26(a)(1)(A)..................................... 20

Federal Rule of Civil Procedure 26(a)(1)(B) ..................................... 18

Federal Rule of Civil Procedure 26(f) ....................................... 13, 20

Federal Rule of Civil Procedure 56 ......................................... 12, 20

Federal Rule of Civil Procedure 60(b).......................................passim

Federal Rule of Civil Procedure 60(b)(1) .......................................... 34

Federal Rule of Civil Procedure 60(b)(2) .......................................... 35

Federal Rule of Civil Procedure 60(b)(3) .......................................... 38

Federal Rule of Civil Procedure 60(b)(4) .......................................... 18

Federal Rule of Civil Procedure 60(b)(5) .......................................... 40

Federal Rule of Civil Procedure 60(b)(6) .......................................... 41

Federal Rule of Civil Procedure 81(a)(6) .......................................... 18

**Other Authorities**

"Securities Class Action Trials in the Post-PSLRA Era,"
    February 5, 2019, Adam T. Savett, Esq., TXT Capital LLC Presentation ........ 24

3 *Nimmer on Copyright*, § 13.05[A] at 13-61 (1982) ............................. 28

Code of Conduct for United States Judges ........................................... 15

Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105, 1126 (1990) ......... 28

## **INTRODUCTION**

This is a securities lawsuit, with a twist: the company at issue has a history of fighting back against its critics with character assassination campaigns to discredit and ultimately silence them. Here, the company went too far. Defendant-Appellee Tesla, Inc. ("Tesla" or the "Company") is an electric vehicle manufacturer with a side-business in energy products run by self-proclaimed "Technoking" and Chief Executive Officer Elon Musk, who for a time as this lawsuit was pending became the wealthiest man on Earth due to his holdings of Tesla stock options. Musk is legendary for his open disdain of short-sellers. Plaintiff-Appellant Aaron Greenspan ("Plaintiff") is a Harvard-educated data journalist and investor, previously a CodeX Fellow at Stanford Law School, who has placed short positions on a number of companies, including Tesla. After Plaintiff tagged @Tesla and @ElonMusk on Twitter to alert them to a video of a Tesla vehicle with a blank central console barreling down a highway, a torrent of coordinated abuse and harassment ensued for years, leading to this litigation.

Since its November 2021 $1.2 trillion peak, Tesla's valuation has fallen by 50%. To date, Elon Musk has been personally named as a defendant in securities fraud-related actions fifty times. Such complaints have cited Tesla's constant and willful use of materially misleading metrics, false statements, and accounting tricks, consistent with those described by Plaintiff in the district court. The fact

that Musk and Tesla settled allegations of securities fraud with the United States Securities and Exchange Commission ("SEC") in 2018 with each paying a $20 million fine made the sudden upward trajectory of the Company's stock price starting in 2020 notable.

Although Tesla still employs plenty of able communications staff, Musk disbanded the Company's public relations department in the middle of the lawsuit. Instead, with himself as General, Musk deploys an army of nominally independent but centrally managed Twitter trolls and "influencers" to repeat Company talking points and bludgeon any doubters into submission. (He now seeks to own Twitter, Inc.) For years, chief among these shock troops has been Defendant-Appellee Omar Qazi. Qazi, through his company Defendant-Appellee Smick Enterprises, Inc., has authored and posted thousands of pages of false and misleading information about Plaintiff in a no-holds-barred effort to discredit Plaintiff's public records research on Tesla and Musk, and to destroy his reputation. An internet search for "Aaron Greenspan" today yields Qazi's website as one of the top results, bearing anti-Semitic, doctored images of Plaintiff, in addition to countless Twitter threads authored by Qazi spreading an assortment of lies. Some of these posts have cribbed entire sections of Plaintiff's copyrighted works as part of Defendants' coordinated effort to destroy his credibility.

2

Even after more than one whistleblower came forward to Plaintiff, providing internal Tesla documents demonstrating that securities fraud was indeed taking place and that Qazi was acting as a contractor of the Company and taking instruction from Tesla—some of which Plaintiff filed in open court—the court held that Plaintiff had not provided enough specific information to allege securities fraud or that Qazi had been acting as Tesla's agent. In reaching its conclusions, the court relied on the Private Securities Litigation Reform Act's ("PSLRA") heightened pleading standard, ignoring Plaintiff's concerns about its validity and applicability in this case; wrongfully denied Plaintiff access to discovery; made numerous errors of fact; and repeatedly ruled in a manner directly contradicted by other courts adjudicating overlapping issues in proceedings involving Musk and Tesla. While demanding exacting specificity, the court imposed unprecedent page limits on the complaint, vacated every hearing, and disregarded outright perjury by Defendants, some of which was later admitted to pursuant to 18 U.S.C. § 1623(d). Notably, the court's impartiality was compromised by payments from Tesla and Musk's law firms to the judge's wife's legal consulting business, which were redacted on disclosure forms and actively concealed in an order denying a motion for recusal. That motion should have been delegated to an impartial adjudicator.

This Court should reverse the judgment of the district court and order the assignment of a different judge to hear the case. In addition, this Court should

recognize that at least those sections of the PSLRA which conflict with the Federal Rules of Civil Procedure (the "Rules") are of "no further force or effect."

## JURISDICTION

Plaintiff-Appellant Aaron Greenspan filed a Fourth Amended Complaint alleging violations of copyright law, the Digital Millennium Copyright Act, §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated by the United States Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. The district court had federal question jurisdiction under Exchange Act § 27 (15 U.S.C. § 78aa) and 28 U.S.C. §§ 1331, 1337, 1338(a). The district court dismissed the Fourth Amended Complaint on May 19, 2022. ER-101—104. The district court also entered judgment on May 19, 2022. ER-100. Plaintiff timely filed a motion for reconsideration pursuant to Rule 60(b) on June 15, 2022. ER-078—096. The district court denied the motion on June 30, 2022. ER-001—002. Plaintiff timely appealed on July 25, 2022. ER-263—266. This Court therefore has jurisdiction. 28 U.S.C. § 1291.

## **STATEMENT OF THE ISSUES**

1. Whether the sections of the Private Securities Litigation Reform Act of 1995 that forbid a securities plaintiff access to discovery until a motion to dismiss has been decided, as well as those which establish an elevated pleading standard requiring evidence of scienter, are rendered null and void by the more recent Federal Rules of Civil Procedure affirmed by Congress pursuant to 28 U.S.C. § 2072(b), which states: "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

2. Whether the district court erred in determining that the wholesale reproduction of registered copyrighted works as part of a bad-faith campaign of intimidation, harassment, and character assassination is entitled to the defense of "fair use" given existing Supreme Court precedent.

3. Whether the district court's judgment should have been vacated pursuant to Plaintiff's timely motion under Rule 60(b).

## **CIRCUIT RULE 28-2.7 STATEMENT**

The addenda attached to this brief include the text of 15 U.S.C. § 78u-4, as well as the text of 28 U.S.C. § 2072.

## STATEMENT OF THE CASE

**I.     Tesla, Inc. Achieved Its $1.2 Trillion Valuation By Waging A Campaign Of Internet Harassment Against Journalists And Short-Sellers**

Shares of Tesla, Inc. (NASDAQ: TSLA) began trading publicly on June 29, 2010.  With its focus on electric cars, the Company was initially regarded by investors as a highly experimental and risky bet, and shares remained essentially flat through the beginning of 2013.  ER-147.  From 2013 through 2020, the Company's stock traded in a slightly elevated range, during which time the Tesla Model S luxury sedan, Model X sport utility vehicle, and Model 3 mid-range sedan were released.  Then, in 2020, something happened.  The battle to identify exactly what is at the crux of this litigation.  Tesla's stock price began a *meteoric* rise, from $28.30 per share on January 2, 2020 to a peak of $414.50 on November 4, 2021, a 1,464% increase in approximately 22 months.[1]  When measured from the company's Initial Public Offering price of $1.267, the stock increased by 32,715%.[2]  By the end of November 2021, Tesla had a market capitalization in excess of $1.2 trillion, making the Company more valuable than the rest of the automotive manufacturing industry combined.  Now, not even a year later, the Company has lost half of its peak value.

---

[1] All TSLA prices cited in this brief are split-adjusted.
[2] For the sake of comparison, the stock price of Apple, Inc. increased during the same timeframe by only about 1,600% as Apple became the most valuable company in the world, valued at approximately $3 trillion.

Long before 2020, Tesla had attracted attention as a favorite target of short-sellers who believed the Company was overvalued and suffering from a multitude of serious problems that threatened its solvency. Plaintiff, who purchased put options on TSLA shares beginning in late 2018, independently researched the Company and ultimately subscribed to this belief. ER-149. As the operator of a legal research service called PlainSite that makes government resources, including court documents, available to the public free of charge, Plaintiff began indexing Tesla's uniquely extensive litigation history and sharing news of its legal concerns on the Twitter social network. *Id*. PlainSite quickly became a primary source for journalists covering Tesla at *The New York Times*, *The Wall Street Journal*, *Bloomberg*, *Reuters*, and CNBC, as well as Wall Street analysts.

It did not take long for there to be blowback. When Plaintiff attempted to alert the @Tesla and @ElonMusk Twitter accounts to a serious safety issue recorded in a video posted by a Tesla owner, someone else replied instead: a pseudonymous account called @tesla_truth, notorious for harassing journalists. The @tesla_truth account proceeded to publicize deranged conspiracy theories about Plaintiff's family that had been posted by a convicted murderer against whom Plaintiff had previously secured a restraining order, and refused to stop when asked. ER-150. Unmasking the owner of the abusive account did not take long: it belonged to Omar Qazi, the twice-arrested CEO of Smick Enterprises, Inc.,

a Tesla owner and shareholder with a variety of fake Twitter accounts, including the @tesla_truth account on which he referred to himself as "Steve Jobs" and later "Steve Jobs *[sic]* Ghost." ER-151—152.

Qazi's attacks were baseless, unremitting, personal, and often dangerous. Among various acts over a period of years, Qazi repeated the deranged accusations, specifically directing his followers to websites with photographs of Plaintiff's parents' home, including its address. ER-150. Qazi impersonated an AT&T technician. ER-151. Qazi posted altered court documents from the restraining order proceedings on social media to attempt to convince his followers that ultimately Plaintiff had been the one restrained. ER-152. At Qazi's explicit direction, Plaintiff received a pornographic fax and accompanying threat that he would be reported to law enforcement for supposed possession of child pornography. (Plaintiff promptly alerted the Federal Bureau of Investigation and the San Francisco Police Department.) ER-152—153. Qazi both impersonated and contacted Plaintiff's father and severely disabled brother. ER-156. Qazi created multiple websites dedicated to falsely smearing Plaintiff as a sexual predator, tax cheat, and malicious hacker, and authored libelous posts on roughly a dozen more sites. ER-162. Qazi labeled Plaintiff a likely school shooter and a "serial rapist" and baselessly called Plaintiff's father—a medical school professor—a "danger to students." ER-181. Qazi took photographs of dozens of

8

full pages of Plaintiff's published memoir and posted them on a website he believed was outside of the court's jurisdiction in order to deprive Plaintiff of both legal recourse and profits from selling his book. ER-183. Qazi attacked a random woman on Twitter because she happened to have the same name as a college classmate of Plaintiff's. ER-184. Musk himself even joined in, repeatedly smearing Plaintiff on his Twitter account, watched closely by tens of millions. ER-173—179.

As time went on, it became clear that Omar Qazi was not an ordinary Tesla fan. For his harassing antics, he was the recipient of praise from Elon Musk and was put directly in touch with Attorney Alex Spiro, Musk's lawyer.[3] When Qazi was banned from Twitter for abusing copyright law and its Terms of Service, Musk directly e-mailed Twitter co-founder Jack Dorsey to plead Qazi's case. ER-149. Qazi also formed a core part of a group called Third Row Tesla that secured a multi-hour interview with Musk in one of Musk's many homes—a privilege Musk refused to bestow on any journalist at the time. ER-159—160. On Twitter, Qazi frequently shared seeming material non-public information about Tesla operations while relentlessly promoting Company initiatives, most notably "Autopilot" and "Full Self-Driving," an autonomous driving technology currently under

---

[3] At the time, Attorney Spiro had not appeared in this case, although Spiro never technically appeared since he failed to file a *pro hac vice* motion in the district court and is not a member of the Bar of the Northern District of California.

9

investigation by the National Highway Traffic Safety Administration ("NHTSA") and the California Department of Motor Vehicles, among other government agencies worldwide. Much of Plaintiff's Fourth Amended Complaint is devoted to explaining the circumstances around the relentless, abusive, and unlawful acts of Defendant Qazi, who appeared dead set on intimidating Plaintiff into silence on matters pertaining to Tesla and Musk. ER-165—173, ER-179—190.

Qazi's campaign of internet harassment was integral to the fantastic ascent of Tesla's stock price. By deploying Qazi to discredit and silence critics and by actively rewarding him the more he succeeded, Elon Musk helped ensure that the media narrative around Tesla would remain relentlessly positive, even as the Company repeatedly teetered on the brink of bankruptcy, which Musk later admitted to in contradiction with Tesla's fraudulent SEC filings. ER-145—147. Since Musk, Qazi, and the other Third Row Tesla members[4] were so successful at constructing a media narrative built on fantasy while suppressing Plaintiff's and others' factual accounts,[5] Tesla's stock price was completely disconnected from reality for the entirety of 2020, causing Plaintiff to lose money.

---

[4] Plaintiff later received irrefutable proof that Third Row Tesla member Vivian Hantusch, who regularly appeared alongside Qazi, began working for Tesla in late 2020 in Elon Musk's "Office of the CEO."

[5] Defendant Qazi similarly attacked others who made factual statements about Tesla and Musk, including Associated Press journalist Tom Krisher, CNBC journalist Lora Kolodny, *Los Angeles Times* journalist Russ Mitchell, Biden NHTSA appointee Dr. Mary-Louise Cummings, and attorney Lawrence Fossi.

**II.     Publicly Traded Corporations Have Been Shielded From Accountability For Securities Fraud By The PSLRA, A Law That Is At Least Partially Nullified By 28 U.S.C. § 2072(b)**

Plaintiff's securities claims, detailed in a chart in the Fourth Amended Complaint, are premised on twelve core issues, which distill the Company's trillion-dollar fraud down to specific false and misleading statements.  ER-192—209.  The exacting level of detail in Plaintiff's complaint, far surpassing that required by Federal Rules of Civil Procedure 8 or 9(b), is nominally required by the PSLRA, passed by Congress in 1995.  The Congressional Record reflects that the PSLRA was based upon the pretext that securities lawyers hunting for fake plaintiffs were harming corporate interests by filing lawsuits involving no actual losses, just to obtain settlements through the threat of discovery.  The PSLRA remedied this problem not by imposing a dollar minimum on claims or a temporal threshold for holding securities, but imposing an extremely high bar for pleading claims while automatically withholding the very mechanism necessary to meet or surpass it: discovery.

Since the PSLRA's passage, federal courts have viewed securities lawsuits through a lens of deep suspicion, even in circumstances such as these, where the plaintiff is a *pro se* non-lawyer, his attached chart of stock transactions undeniably demonstrates significant monetary losses, and the lead defendant has been sued more often for securities fraud than any person in history, having already settled

11

damning allegations of securities fraud with the SEC, and having already been found to have acted with scienter by a federal judge.  ER-094.

Due to the PSLRA's demanding pleading standard, it is practically unheard of for Americans to go to court on their own, without counsel, to attempt to recover losses from securities fraud, which is rampant.  Out of thousands of cases filed, only 14 federal securities cases made it to a trial verdict in the first 23 years since the PSLRA was passed.  *Zero* of those cases involved *pro se* plaintiffs.  In other words, the PSLRA establishes an impossible pleading standard for the average American.  This is unconstitutional.

The PSLRA also plainly conflicts with the Federal Rules of Civil Procedure, specifically Rules 8, 9(b), 26 through 37, 56, and 81, in that it alters the pleading standard and forbids discovery mandated by the Rules.  While the Supreme Court, working in conjunction with Congress, had every opportunity to amend the Rules to incorporate ideas from the PSLRA, they did not.  Today, the Federal Rules of Civil Procedure make no exceptions for securities cases, having been amended most recently with an effective date of December 1, 2020.  Accordingly, pursuant to 28 U.S.C. § 2072(b), "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."  Thus, the PSLRA is of no further force or effect, at least with respect to the sections that conflict with the

Rules. Plaintiff should be allowed to conduct discovery, and the district court's

dismissal, premised on the PSLRA's elevated pleading standard, must be reversed.

## III.    Proceedings in District Court

Plaintiff filed a Complaint in the district court on May 20, 2020, alleging

securities fraud, copyright infringement, and various state law claims including but

not limited to libel. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a

First Amended Complaint adding a claim for violation of the Digital Millennium

Copyright Act ("DMCA"), 17 U.S.C. § 1202(b), was filed on July 2, 2020 prior to

the filing of any responsive pleading. ER-271. On August 3, 2020, Plaintiff

requested that the court clarify the applicability of the PSLRA to *pro se* litigants

after Defendants refused to hold a mandatory Rule 26(f) discovery conference.

ER-250—262. The district court entered a two-sentence order on August 7, 2020

citing no precedent, but refusing to lift the PSLRA discovery stay. ER-249; ER-

274. Defendants later stipulated to the filing of a Second Amended Complaint,

which was filed on August 26, 2020. ER-275. The district court granted leave to

file a Third Supplemental and Amended Complaint, which was filed on February

12, 2021. ER-278—279. On June 23, 2021, the district court issued its first

substantive ruling on Plaintiff's claims, granting Defendants' motions to dismiss

with leave to amend. ER-223—244. Plaintiff filed a Fourth Amended Complaint

on August 13, 2021. ER-144—216. The district court issued a ruling granting

13

Defendants' motions to dismiss and entering judgment on May 19, 2022. ER-100—104; ER-285. Plaintiff timely filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b) on June 15, 2022. ER-078—096; ER-286. The court denied that motion on June 30, 2022 without permitting Plaintiff to file a reply brief. ER-001—002; ER-286. Plaintiff timely filed his notice of appeal on July 25, 2022, and this appeal followed. ER-263—266; ER-286.

## **SUMMARY OF THE ARGUMENT**

The PSLRA is "of no further force or effect" due to its unavoidable and irreconcilable conflicts with the more recently updated Federal Rules of Civil Procedure. Accordingly, Plaintiff's federal securities claims were evaluated under the wrong pleading standard—for *pro se* filers, an impossible standard, historically speaking—in the lower court. The improper denial of those claims, as well as the other federal claims, led the district court to decline supplemental jurisdiction. Furthermore, Plaintiff was never given the opportunity to amend his complaint with the benefit of discovery, even as to the numerous non-securities claims (*e.g.*, defamation, violation of the California anti-stalking statute, copyright infringement, and removal of Copyright Management Information pursuant to the DMCA).

14

Yet even if this Court holds that the PSLRA does not conflict with the Rules, Plaintiff's *pro se* status mandates that the PSLRA should not apply here. And even if the Court is not persuaded and determines that the PSLRA applies in this action, Plaintiff's copyright and DMCA claims offer federal questions that the lower court improperly dismissed.

The district court erred in its dismissal of Plaintiff's copyright claim by accepting Defendants' "fair use" defense, which is not available to them because their conduct has been anything but "fair." Supreme Court precedent precludes the invocation of fair use in these circumstances, and all four fair use factors weigh against Defendants.

Finally, the district court erred by issuing factually erroneous rulings that ignored new evidence and key precedent, by permitting a chaotic [virtual] courtroom environment that allowed fraud to go unchecked, by denying due process, and by violating the Code of Conduct for United States Judges through actions that no reasonable person would describe as impartial, all in violation of Rule 60(b). On remand, due to Judge James Donato's history of actively concealing financial conflicts, this Court should order the assignment of a new judge to the case.

15

## ARGUMENT

**I.    The PSLRA Conflicts With The Federal Rules of Civil Procedure, Rendering At Least Part Of The PSLRA "Of No Further Force Or Effect"**

### A.    Standard of Review

On account of the automatic PSLRA discovery stay in this action, the district court's decision should be reviewed *de novo* for abuse of discretion.  "Stays of discovery pending resolution of the motion to dismiss are also reviewed for an abuse of discretion.  *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993)."  *Lazar v. Kroncke*, 862 F. 3d 1186, 1193 (9th Cir. 2017).  "In general, we review denials of motions to vacate for abuse of discretion.  *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1166 (9th Cir.1998); *Nat. Union Fire Ins. Co. v. Seafirst Corp.*, 891 F.2d 762, 765 (9th Cir.1989)."  *United States v. Est. of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011).

### B.    The Rules Have Been Revised And Made Effective Repeatedly Since The PSLRA Was Signed Into Law On December 22, 1995, Rendering The PSLRA Of No Further Force Or Effect

The PSLRA was signed into law on December 22, 1995.  Per the notes to Rule 26, that Rule has been revised and made effective five times thereafter:

- Apr. 17, 2000, eff. Dec. 1, 2000;

- Apr. 12, 2006, eff. Dec. 1, 2006;

- Apr. 30, 2007, eff. Dec. 1, 2007;

- Apr. 28, 2010, eff. Dec. 1, 2010;

- Apr. 29, 2015, eff. Dec. 1, 2015.

As a whole, the Rules were again amended effective December 1, 2016 and December 1, 2020. On each of these effective dates, the new Rules promulgated by the Supreme Court and approved by Congress under the Rules Enabling Act invalidated the older PSLRA pursuant to 28 U.S.C. § 2072(b).

By way of example, in 2020, the district court considered litigation that involved a different rule: Rule 702 of the Federal Rules of Evidence. "Rule 702 was amended in 2000, seven years after *Daubert* was decided. Amendment of the rule required approval by the Supreme Court and acceptance by Congress under the Rules Enabling Act, and the amended rule superseded any other law… Thus, Rule 702 provides the governing law." *In Re Viagra (Sildenafil Citrate)*, 424 F. Supp. 3d 781, 789 (N.D. Cal. 2020). Similarly, the district court in New Jersey considered how § 2072 interacted with Rule 4. "Indeed, § 2072 explicitly states that '[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.' 28 U.S.C. § 2072(b). 'Where a Rule of Civil Procedure conflicts with a prior statute, the Rule prevails.' *Penfleld Co. of Cal. v. SEC*, 330 U.S. 585, 589 n.5 (1947); *see also Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 849 (7th Cir. 2012); *Republic Tobacco Co. v. N Atl. Trading Co.*, 481 F.3d 442, 448 (2d Cir. 2007). Here, there is no question that Rule 4, adopted in

17

1976, would supersede § 2243, enacted in 1948, if a conflict exists between the two." *Iremashvili v. Rodriguez*, Case No. 2:15-cv-06320-CCC at 4 (D.N.J. March 9, 2017).

Moreover, on each of the effective dates for Rule 26, the Supreme Court and Congress had an opportunity to add "securities actions" or "actions subject to the PSLRA" to Rule 26(a)(1)(B), "Proceedings Exempt from Initial Disclosure." They did not. The only types of actions exempt from initial disclosures—the first step in the discovery process—are the nine types enumerated in that sub-section, none of which are not related to securities law. The Supreme Court and Congress also could have chosen to add "securities actions" or "actions subject to the PSLRA" to the list of case types exempt from the Federal Rules of Civil Procedure as a whole, in Rule 81(a)(6). Again, they did not.

The district court in this case did not address the fact that the Rules supersede and thus invalidate the PSLRA and issued a two-sentence order on August 7, 2020 refusing to lift the PSLRA discovery stay in response to Plaintiff's emergency motion. ER-258—259; ER-249. The district court's order cited to no precedent or federal law.[6] Notably, the district court sidestepped this issue in its

---

[6] As Plaintiff wrote at the time in support of the argument that the district court failed to provide due process under Rule 60(b)(4), "The record is also peppered with one- and two-sentence rulings on significant questions of law—especially with regard to the PSLRA—that cite nothing whatsoever." ER-093.

June 30, 2022 ruling on Plaintiff's Rule 60(b) motion, writing only, "Greenspan's passing comment that he was 'denied' due process, Dkt. No. 178 at 12, is belied by the ECF docket, which demonstrates that he was given five opportunities over a period of two years to plausibly allege a claim, and other accommodations in light of his pro se status." ER-002. While it is true that the lower court permitted amendment liberally as required, those amendments lacked the benefit of discovery because of the court's improper refusal to lift the PSLRA discovery stay. Yet the lower court never addressed Plaintiff's citations to the Congressional Record or 28 U.S.C. § 2072(b). ER-001—002; ER-249; ER-250—262.

### C. The PSLRA And Numerous Federal Rules Of Civil Procedure Concerning Discovery Cannot Be Reconciled

One of the PSLRA's defining characteristics is the mandatory discovery stay pending a ruling on a motion to dismiss, imposed in all securities actions. "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Title V of the Federal Rules of Civil Procedure—comprising Rules 26 through 37, or twelve distinct Rules in all—concerns "Disclosures and Discovery." One could reasonably argue that the PSLRA's discovery stay conflicts generally with all of

these rules, which make no exception for securities actions, but it is also possible to pinpoint several specific conflicts.

For example, Rule 26 mandates: "Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party ***must***, without awaiting a discovery request, provide to the other parties…" (emphasis added). Rule 26(a)(1)(A). This directive, applicable and mandatory in every federal securities action, is in clear conflict with the PSLRA. In this particular action, counsel for Defendant-Appellees Tesla, Inc. and Elon Musk ("Tesla Defendants") wrote by e-mail to Plaintiff on July 29, 2020, "Tesla Defendants do not agree to participate in a Rule 26(f) conference at this stage." The same day via e-mail, opposing counsel cited "*In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1105 (C.D. Cal. 2007) (citing *SG Cowen Securities Corp.*, 189 F.3d 909, 911 (9th Cir. 1999).)" for the proposition that the discovery stay was mandatory until a motion to dismiss had been ruled upon. Yet the underlying Ninth Circuit precedent, *SG Cowen*, was decided before the Rules were amended the following year. Since then, the Ninth Circuit has also recognized that automatic discovery stays conflict with Rule 56.[7]

---

[7] The PSLRA's conflict with Rule 56 is evident in the context of anti-SLAPP motions.

> "The *Metabolife* court concluded that an automatic stay on discovery would conflict with Federal Rule of Civil Procedure 56, and was inapplicable in federal court. *Id.* at 846 ('the discovery limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspect of Rule 56' and therefore, § 425.16(f) and (g) could not apply in federal court.)… In *Z.F. v. Ripon*

Securities defendants and district judges have grown accustomed to
disregarding discovery in PSLRA actions, and Rule 26 in particular.  Yet this new-
since-1995 custom of ignoring Rule 26 in PSLRA cases is itself in conflict with
federal law.  28 U.S.C. § 2072 states in part:

> "(a) The Supreme Court shall have the power to prescribe general rules of
> practice and procedure and rules of evidence for cases in the United States
> district courts (including proceedings before magistrate judges thereof) and
> courts of appeals.
>
> (b) Such rules shall not abridge, enlarge or modify any substantive right.  ***All
> laws in conflict with such rules shall be of no further force or effect after
> such rules have taken effect***" (emphasis added).

28 U.S.C. § 2072.  Accordingly, at least the conflicting portions of the PSLRA

have been "of no further force or effect" since December 1, 2000.

---

*Unified School District*, a non-precedential unpublished opinion, we stated:
'…if it is a factual challenge, then the motion must be treated as though it
were a motion for summary judgment and discovery ***must*** be permitted.'
482 Fed. Appx. 239, 240 (9th Cir. 2012).  Although we are not bound by
*Z.F.*, we conclude that its reasoning is persuasive and we hereby adopt it…
Requiring a presentation of evidence without accompanying discovery
would improperly transform the motion to strike under the anti-SLAPP law
into a motion for summary judgment without providing any of the
procedural safeguards that have been firmly established by the Federal Rules
of Civil Procedure.  That result would effectively allow the state anti-SLAPP
rules to usurp the federal rules.  We could not properly allow such a result."
(emphasis added)

*Planned Parenthood v. Center for Medical Prog*., 890 F. 3d 828, 833-834 (9th Cir.
2018).  As in *Planned Parenthood*, the instant litigation involved an anti-SLAPP
motion challenging facts (mandating discovery).  It ***also*** involved the PSLRA
(nominally forbidding discovery) at the same time.  ER-121; ER-274—281.  The
district court ignored this conflict, forbidding access to discovery.  ER-101—104.

### D.     The PSLRA And Federal Rules Of Civil Procedure 8 and 9(b) Cannot Be Reconciled

The same principles that render the PSLRA's discovery stay "of no further force or effect" also apply to the heightened pleading standard codified at 15 U.S.C. §§ 78u-4(b)(1) and 78u-4(b)(2)(A).  The former section states that:

> "In any private action arising under this chapter in which the plaintiff alleges that the defendant—
>
> > (A) made an untrue statement of a material fact; or
> >
> > (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."

15 U.S.C. § 78u-4(b)(1).  This is the crux of the PSLRA's pleading standard, further heightened by sub-section (b)(2) requiring "facts giving rise to a strong inference that the defendant acted with the required state of mind," collectively referred to by the Supreme Court with the phrase "exacting pleading requirements."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499 (2007).  In practical terms, however, this "exacting" standard is impossible to meet when discovery is denied to individual plaintiffs who are not represented by counsel, and near-impossible even when plaintiffs are well represented.  The PSLRA's standard leads to massive securities complaints full of

22

details and SEC filings that many judges still deem not "particular[ized]" enough to meet the stringent threshold.[8]  And though the Supreme Court did address what the undefined term "strong inference" means through its holding in *Tellabs*, it did not address the issue of whether the PSLRA was valid law in the first place given the various historical amendments to the Rules.  While *Tellabs* recognized Congress's "prerogative…to allow, disallow, or shape the contours of — including the pleading and proof requirements for — § 10(b) private actions," it also cited the Supreme Court's prior holdings "recognizing that heightened pleading requirements can be established by ***Federal Rule***, citing Fed. Rule Civ. Proc. 9(b), which requires that fraud or mistake be pleaded with particularity" (emphasis added).  *Id*. at 2512.  Yet the PSLRA is not a Federal Rule.

For decades, up until a short time before its opinion in *Tellabs* was issued, the Supreme Court was seemingly unwilling to overlook this key distinction.  "[T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits.  A requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'  *Leatherman*, *supra*, at 168."

---

[8] Plaintiff was criticized by the lower court for attempting to comply with this standard yet also given a limit of 50 pages for his Fourth Amended Complaint, increased after protest to 75.  ER-210.  PSLRA complaints filed in federal courts routinely exceed 200 pages; to the best of Plaintiff's knowledge, no other court in the United States has ever issued such an order limiting pages in a PSLRA action.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). And while Congress does indeed have the freedom and ability to legislate in a variety of areas outside of the Rules, as *Tellabs* alludes to,[9] doing so runs the risk of a conflict subject to 28 U.S.C. § 2072(b). Here, there is a "direct collision" between the PSLRA and Rules 8 and 9(b), to borrow language useful in the analysis of conflicts with state laws. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999). 15 U.S.C. § 78u-4(b) and Rules 8 and 9(b) answer the same question: what constitutes a sufficient complaint in federal court? In such a situation, Congress has legislated that the Rules always win, which is perhaps why in its more carefully-worded opinions both before and after the PSLRA's passage, the Supreme Court made clear that in order to change pleading standards, the Rules themselves must be modified.

A sizable majority of the thousands of PSLRA actions filed since 1995 have gone to the graveyard of dismissal due to the problematic pleading standard, with only 14 cases tried to a verdict from 1995 through February 2019.[10] Could a *pro se* litigant arguing some twenty-seven years after the law was passed actually have a

---

[9] Even the "instructive" example in *Tellabs* involves "a ***rule*** adopted by the Supreme Court of the District of Columbia in 1879 pursuant to rulemaking power delegated by Congress" (emphasis added). *Id*. at 2513.

[10] *See* "Securities Class Action Trials in the Post-PSLRA Era," February 5, 2019, Adam T. Savett, Esq., TXT Capital LLC Presentation, http://documents.jdsupra.com/ce8d448a-5b44-481a-8f7f-e977c91dc0a4.pdf.

point about the federal judiciary's interpretation for the vast majority of that time? The answer is yes.

Ninth Circuit precedent speaks for itself. "The defendants have not found any prior case where the inconsistency between the statute and the Rules has been acknowledged. But once the problem has been pointed out, it does not go away simply because no one has noticed it before… [W]e are expressly instructed as to the Rules that 'All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.' 28 U.S.C. § 2072(b). The Rule trumps the statute. No conflict exists because § 2072 has abolished it." *United States v. Kim*, 298 F. 3d 746, 749 (9th Cir. 2002).

## II. The Qazi Defendants Are Not Entitled To A Fair Use Defense On Plaintiff's Copyright Claim And The Factors Disqualify It Anyway

### A. Standard of Review

The copyright issue in this case presents a mixed question of law and fact. "We have said, '[f]air use is a mixed question of law and fact.' *Harper & Row*, 471 U.S. at 560, 105 S.Ct. 2218. We have explained that a reviewing court should try to break such a question into its separate factual and legal parts, reviewing each according to the appropriate legal standard." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021). Here, the analysis merits *de novo* review. "We review a district court's grant of a motion to dismiss *de novo*. *Silvers v. Sony Pictures*

*Entm't, Inc.*, 402 F.3d 881, 883 (9th Cir. 2005) (citation omitted)." *Leadsinger,*

*Inc. v. BMG Music Pub.*, 512 F. 3d 522 (9th Cir. 2008).

### B. The District Court Never Addressed Plaintiff's Actual Arguments Concerning Fair Use

The district court left entirely unaddressed Plaintiff's core argument about

why Defendants' copyright defense of fair use fails, and ignored the facts

underlying Plaintiff's remaining arguments. Defendants were ineligible for "fair

use" by virtue of their own unlawful, bad-faith conduct. Even if they were

somehow still eligible, all of the fair use factors still weighed against them.

Plaintiff raised this point both in Plaintiff's opposition to Defendants' motion to

dismiss and again in Plaintiff's motion for reconsideration of the lower court's

judgment. ER-112—116; ER-092—093. In response, the district court wrote in its

first substantive order that Plaintiff was perhaps emotionally "offended" by what

Defendants had written, but that per the copyright statute, "criticism and

commentary qualify as fair use."[11] ER-240. In its next substantive order on

Plaintiff's claims, the district court wrote,

---

[11] After years of motion practice, by "terminating" Defendants' Special Motion to Strike pursuant to California Code of Civil Procedure § 425.16 and declining to exercise supplemental jurisdiction over Plaintiff's libel and civil harassment claims, the district court evaded having to rule on whether Defendants' character assassination campaign and harassment ran afoul of the law. ER-234. Of course, the declination of supplemental jurisdiction was premised in part on the denial of the copyright claim, which was premised on the district court's ignoring the alarming facts surrounding Defendants' aforementioned conduct. This circular reasoning cannot be the basis for a just outcome.

> "As discussed in the prior dismissal order, the challenged conduct was well within fair use as commentary and criticism. Dkt. No. 125 at 16-20; *see also In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 884-85 (N.D. Cal. 2020). Nothing in the FAC provides a good reason to revisit the Court's conclusions about the fair use elements of the nature of the work, the amount and substantiality of the portion used, and the effect of the use on the market. Dkt. No. 125 at 16-20; *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563-66 (1985)."

ER-103. The two caselaw citations in this section of the order, to an inapposite ruling by Judge Donato himself and a slice of the Supreme Court's decision in *Harper & Row*, respectively, skipped over the key portion of *Harper & Row* cited by Plaintiff, from 562-563, which addresses bad-faith conduct. ER-113. Finally, on Plaintiff's motion for reconsideration, the district court stated:

> "Nothing in the motion warrants reconsideration of the judgment or the reasons leading up to it. Most of the motion simply rehashes Greenspan's prior unsuccessful arguments, and emphasizes his disagreement with the Court's findings and conclusions. These are not good grounds for reconsideration under Rule 60(b)" (citation omitted).

ER-002. Again, this cursory dismissal did not address Plaintiff's point.

## C. Supreme Court Precedent Precludes "Fair Use" In Cases Where Bad Faith Can Be Demonstrated

The Supreme Court has established that one is not automatically entitled to the defense of fair use; it must be earned, through good-faith conduct. "Fair use presupposes 'good faith' and 'fair dealing.'" *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562-563 (1985). This is why, after considerable

27

evolution of jurisprudence on the matter,[12] analysis of the defendant's good or bad faith is now widely considered part of the first factor for evaluating fair use: the "purpose and character" of the copying. 17 U.S.C. § 107. While some contexts, such as the copying of computer code from one program to another, do not lend themselves to an analysis of good or bad faith at all, others do. "We have no occasion *here* to say whether good faith is as a general matter a helpful inquiry" (emphasis added). *Google*, *supra*, at 1204. "Because fair use presupposes that the defendant has acted fairly and in good faith, the propriety of the defendant's conduct should also be weighed in analyzing the purpose and character of the use [foonote omitted]. *See* 3 *Nimmer*, *supra*, Sec. 13.05[A] at 13-61." *Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir. 1983). "Although transformative use is the 'primary inquiry' under this factor…courts also consider whether the use was for a commercial purpose and whether the use was in bad faith" (citation omitted). *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 532 (S.D.N.Y. 2018). *See also Stebbins v. Rebolo*, Case No. 4:22-cv-00546-JSW (N.D. Cal. July 11, 2022)

---

[12] In 1990, Judge Pierre N. Leval militated against any consideration of "the morality of the secondary user," arguing for analysis that purely considers whether an allegedly infringing work is "of the type that should receive those benefits." Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105, 1126 (1990). This framework presupposes the hypothetical situation, perhaps as yet untested in reality, where a bad-faith actor copies and/or transforms a protected work in such a way that is beneficial to the public, thus justifying a fair use defense. Such an actor may have a defense, but it is not fair use. Had Qazi been inspired to create Warhol prints of Plaintiff's book cover, his history of unlawful bullying and abuse would and should have precluded his having rights to that derivative work.

("an effort to silence online criticism smacks of bad faith"). Here, all four Defendants went to great lengths to silence Plaintiff.

Given that good faith is assumed, it is infrequently addressed in judicial analysis. Artists, journalists, educators, students, and even in many instances businesses, among others, contribute to the public sphere daily by combining and transforming copyrighted works. Rarely, however, bad-faith actors, whose goal is not to inform the public, but rather, to mislead it or to otherwise cause harm, cannot resist the urge to tread on the realm of copyrighted work. If and when that takes place, infringement is an appropriate finding, for the term "fair" in "fair use" loses all meaning otherwise.

There are two ways to distinguish between cases of hurt feelings and cases of bad-faith conduct as described above. One is to rely on an exogenous finding that a defendant's conduct has already violated some other law. Another is to conduct an analysis of the defendant's motives in concert with the other factors. Here, the district court made no findings at all on Plaintiff's related state claims involving Qazi and Smick Enterprises, Inc. ("Qazi Defendants") and based its fair use analysis on a misunderstanding of the facts as described below.

### D. The Fair Use Factors Weigh Heavily Against Defendants, Who Conceded Acting In Bad Faith

In Plaintiff's motion for reconsideration pursuant to Rule 60(b), Plaintiff raised the issue of the district court's botched fair use analysis. ER-092. Qazi

Defendants filed an opposition in response. Their 4.25-page brief contained no reference to the issue of fair use, no refutation of Plaintiff's allegation that Defendants had acted in bad faith, and no denial that the district court had made errors. ER-003—008. "Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived. *See Locricchio v. Office of U.S. Trustee*, 313 Fed. Appx. 51, 52 (9th Cir. 2009)." *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203 (N.D. Cal. 2009). Thus, Defendants conceded these points.

### 1. Purpose and Character

Qazi Defendants infringed Plaintiff's copyright in Plaintiff's published memoir *Authoritas* for three reasons: (1) to artificially inflate Tesla's stock price by attempting to harm Plaintiff's credibility through false statements based on his memoir; (2) to harm Plaintiff financially by shrinking the market for the memoir (in Qazi's words, "I read Aaron Greenspan's life story so you don't have to"); and (3) to earn profits from Google AdSense banner advertisements placed on Qazi's website where many of the screenshots[13] of *Authoritas* appeared. ER-182—186; ER-239. The district court ignored these facts and instead focused on Plaintiff's characterization of Qazi's posts as "fake reviews," failing to understand that by

---

[13] A screenshot is a digital photographic screen capture. Here, Defendant Qazi took numerous pictures of entire pages of *Authoritas* as they were rendered verbatim by Qazi's Amazon Kindle electronic book reader software. Qazi also published actual photographs of physical pages of the hardcover version of *Authoritas*.

using the word "fake," Plaintiff conveyed that they were not *actually* reviews of the memoir, which would contain sincere criticism and substantive thoughts, but rather, further vehicles to harm Plaintiff by spreading disinformation, unprotected satire,[14] and verbatim sections of the book from servers overseas.  ER-240.

## 2.     Nature of the Copyrighted Work

The district court ignored the fact that unlike a telephone book, which is a list of facts, a memoir contains protected expression even as a non-fiction work. ER-115.  This argument went unaddressed in each ruling by the lower court, even when Plaintiff included in the Fourth Amended Complaint specific original, protected phrases that were re-published wholesale by Defendants.  ER-184.  There can be no denying that *Authoritas* is a creative work deserving of protection.

## 3.     Amount and Substantiality of the Portion Used

The district court ruled that Qazi's copying of more than 10% of *Authoritas* verbatim—more than 30 entire pages of a 300-page volume—for the purposes of multiple purported "book review[s]" was potentially "reasonably necessary."  ER-241.  This is farcical.  Most book reviews contain *zero* full pages from the source volume; a sentence, or perhaps a paragraph, might occasionally make an

---

[14] Perhaps not realizing the significance of its word choice in a fair use context, the district court agreed with Plaintiff that Qazi's infringing posts are "satire."  ER-099.  "Parody needs to mimic an original to make its point, and so has some claim to use the creation of its victim's (or collective victims') imagination, whereas satire can stand on its own two feet and so requires justification for the very act of borrowing."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994).

appearance. Full-page excerpts are exceedingly rare; dozens of pages in sequence, unheard of. There is no question that Qazi copied "more than reasonably necessary" if he was attempting to make any kind of substantive point about Plaintiff. Of course, Qazi was not—he admitted one goal was to post the memoir on his own website outside of the United States so that no one would have to purchase it themselves, in order to deprive Plaintiff of income. ER-239.

In the past, the Supreme Court has ruled that using source material for more than approximately 10% of a derivative work suggests infringement. "We need not reach these issues, however, as The Nation has admitted to lifting verbatim quotes of the author's original language totaling between 300 and 400 words and constituting some 13% of The Nation article. In using generous verbatim excerpts of Mr. Ford's unpublished manuscript to lend authenticity to its account of the forthcoming memoirs, The Nation effectively arrogated to itself the right of first publication, an important marketable subsidiary right." *Harper & Row*, *supra*, at 548-549. Qazi copied on the order of 10,000 words from *Authoritas*; one of his posts was 60% verbatim quotations. ER-183. The district court called this "neutral" and pondered "what Qazi did with this material." *Id*. What Qazi "did," as was well described in the Fourth Amended Complaint, was whip up enough baseless hatred against Plaintiff that Greenspan and his family received threatening

phone calls, text messages, e-mails, tweets, and faxes. Such conduct is incompatible with the Congressional intent of the fair use exemption.

### 4. Effect of the Use Upon the Potential Market

The market for *Authoritas*, a self-published book that never benefitted from a major publisher's public relations campaign, is admittedly small. Yet it cannot be disputed that a commercial market exists. Qazi's mischaracterizations of its contents was the first and only impression of the work for many potential buyers. *See Harper & Row*, *supra*, at 552-554. Like many books that do have major publishers, Plaintiff's memoir has sold on the order of several hundred copies, both in hardcover format directly and through major book distributors such as Baker & Taylor, and digitally via Amazon.com. The chilling effect that Defendants' actions had by publishing the book on unauthorized websites, causing sales to simply stop, was therefore proportionally large on that market.[15] ER-185. In summary, none of the fair use factors weigh in favor of Qazi Defendants with respect to the wholesale copying of *Authoritas*.

---

[15] In referring to Plaintiff's memoir and photograph, the district court ruled, "These materials had no known commercial value," and refused to modify its ruling even after Plaintiff attached images of checks from book distributors as payments for copies of *Authoritas*, as well as checks for licensing fees of copyrighted photographs of Plaintiff similar to the one at issue in this action. ER-047—063; ER-099; ER-092. Commercial value is evident from these documents and the fact that *Authoritas* is sold on Amazon.com. *See* https://amzn.to/3TL3Jki.

### III.   The District Court Erred By Failing To Grant Relief Under Rule 60(b)

The district court made numerous reversible errors in the process of evaluating Plaintiff's claims.  Given that all of Plaintiff's filings were timely, the only question is which particular sub-sections of Rule 60 those errors should be ascribed to.

The aforementioned problems with the PSLRA and the fair use defense to Plaintiff's copyright claim fall under Rule 60(b)(1).  The Ninth Circuit recognizes errors of both law and fact by a district court under this sub-part.  "'The law in this circuit is that errors of law are cognizable under Rule 60(b).' *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982) (citation omitted)."  ER-084.  "Rule 60(b)(1) is not limited to mistake or inadvertence by the judgment debtor.  Because the words 'mistake' and 'inadvertence' are not so limited, they may include mistake and inadvertence by the judge."  *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F. 3d 347, 350 (9th Cir. 1999).

#### A.   The District Court Ignored Material New Evidence

During this litigation, Plaintiff received internal Tesla documents from Confidential Witnesses that proved several of his allegations.  ER-009—046.  The district court ignored the substance of these documents, claiming, "The 'new evidence' Greenspan says he has acquired from the SEC and other sources is

essentially more of the same that was found wanting…"  ER-002.  For its part, Tesla attempted to deny that a data breach had even taken place.

The district court and Tesla are both wrong.  Though some of the new evidence came from Freedom of Information Act requests to the SEC, much came from Tesla's internal systems, such as Warp Deliveries Operations and JIRA— what the district court brushed off as "other sources"—and revealed, for example, that the most important metric the Company releases to investors on a quarterly basis, "deliveries" (as opposed to new vehicle "sales"), includes ***used vehicles*** to artificially inflate what most investors think are new sales metrics.  ER-023—038. Tesla's ability to "beat" its quarterly "delivery" estimates routinely propelled its stock higher.  Other internal documents touched on Tesla's materially false and misleading cash balances.  Based on these revelations alone, even under the PSLRA's inapplicable pleading standard, the district court erred in refusing to grant relief from the district court's judgment under Rule 60(b)(2).

### B.    The District Court Erred By Refusing To Acknowledge That Omar Qazi Is At Least An Ostensible Agent of Tesla, Inc.

Among the documents provided by Confidential Witnesses was a copy of the full "Tesla Early Access Program Agreement."  ER-016—018.  In his Fourth Amended Complaint, Plaintiff enumerated twenty-one reasons, (a) through (u), as to why "[s]ince 2019, Defendants Musk and Tesla have treated Defendant Qazi in such a manner as to cause any reasonable observer to believe that Qazi is an actual

or ostensible agent of Defendants Musk and/or Tesla, and more than just a casual friend." ER-173—176. Reason (f) was, "[Tesla] signing a written contract with Defendant Qazi that restricts his discussions with the media about Tesla beta software." ER-174. In fact, that contract, which Defendant Qazi agreed to digitally by pressing a large "ACCEPT" button, causing him to receive an acknowledgement e-mail, came with additional terms and conditions explicitly encouraging sharing on social media. Most notably, Tesla encouraged Qazi and other Early Access Program Agreement signatories to, "Do remember that there are a lot of people that want Tesla to fail; ***don't let them mischaracterize your feedback and media posts***" (emphasis added). ER-020; ER-011; ER-109—110. Furthermore, Galileo Russell, another Tesla Early Access Program participant, Third Row Tesla member, and frequent social media collaborator of Qazi's, filmed himself admitting to Tesla's editorial control over participants' actions, stating, "Tesla doesn't want us sharing all of the clips of the videos. Just like, when it looks good. Because they know people take it out of context." ER-110.

Qazi clearly acted as Tesla, Inc.'s agent. Yet because he strenuously denied any kind of relationship with the Company beyond being a customer and investor—one of his many lies intended to deceive investors and later, the district court itself—his agency was initially inferred by Plaintiff and many others before it could be proven. ER-109—112.

"[T]o establish ostensible authority, the principal's consent need not be express. See *Tomerlin v. Canadian Indem. Co.*, 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571, 575 (1964). While it is true that the ostensible authority of an agent cannot be based solely upon the agent's conduct, see *Kaplan*, 59 Cal.App.4th at 747, 69 Cal.Rptr.2d at 643, it is not true that the principal must make explicit representations regarding the agent's authority to the third party before ostensible authority can be found. For example, ostensible authority may be proven through evidence of … the principal knowing that the agent holds himself out as clothed with certain authority but remaining silent, *see Krieger*, 181 F.3d at 1121, the principal's representations to the public in general, *see Kaplan*, 59 Cal.App.4th at 747, 69 Cal.Rptr.2d at 643, and the customs and usages of the particular trade in question, see *Correa v. Quality Motor Co.*, 118 Cal. App.2d 246, 257 P.2d 738, 741 (1953); *Auto Auction, Inc. v. Riding Motors*, 187 Cal. App.2d 693, 10 Cal.Rptr. 110, 113-14 (1960) (finding that a car salesman had ostensible authority to close an automobile sale based on the circumstances of the case 'as well as in the light of the customs and usages of the particular trade of which we may take judicial notice')."

*CAR Transp. Brokerage v. Darden Restaurants*, 213 F. 3d 474, 480 (9th Cir. 2000). Here, there can be no question that Qazi functioned as a "car salesman" on social media while "remaining silent" about his true relationship with the Company that engaged his services (and his Model 3's "loud screeching sounds"). ER-045.

In another filmed episode, Qazi even exclaimed to Galileo Russell that he would "sell them all fuckin' Teslas" and "pull in those referrals." ER-110. The district court again overlooked all of this, writing, "As stated in the dismissal order, the TAC did not allege anything close to an agency relationship between Musk and Qazi such that Qazi's comments on social media might support a securities claim." ER-103. In response to Plaintiff's Rule 60(b) motion, the district court erred by

refusing to address the issue, despite the clear "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party" pursuant to Rule 60(b)(3).[16]  ER-001—002; ER-108.

### C.    The District Court's Rulings Contradict Related Court Rulings

While the district court litigation was ongoing, Elon Musk tweeted to his tens of millions of followers that Plaintiff belonged in a "psych ward."  ER-155. Later, upon the filing of the First Amended Complaint, Musk tweeted that "Greenspan is crackers, bananas, barky & ten cards short of a full deck."  ER-177. Intense abuse followed.  Musk also referred to Plaintiff as a "nut" in an e-mail written to Twitter's then-CEO on behalf of Qazi.  The district court ruled these to be mere "tart remark[s]" because they were made on "social media."  ER-232.

At least two judges in different courts have opined that Musk should not get away with libel simply because his medium of choice, Twitter, is sometimes used informally.  "…[Musk]'s statements used colloquialisms…[a]nd, as discussed above, Twitter's 280-character limit accounts for abbreviations without necessarily

---

[16] All Defendants deliberately and repeatedly misrepresented facts to the district court.  Qazi's counsel, Karl Kronenberger, committed perjury outright.  He was later forced to correct "errors" in his declaration pursuant to 18 U.S.C. § 1623(d). Separately, he lied to the district court about apologizing for Qazi violating an agreement to keep potential settlement terms confidential.  "In another case, the Court referred to Attorney Karl Kronenberger as 'disingenuous,' 'egregiously disingenuous,' and 'disingenuous' a third time, before calling out his 'frequent distortions of the record.' *Federal Trade Commission v. AH Media Group, LLC et al*, Case No. 3:19-cv-04022-JD (N.D. Cal. November 1, 2021)."  ER-092.

generating an inference of opinion. Thus, contrary to [Musk]'s contention, this factor does not weigh in favor of a conclusion that [Musk]'s statements were nonactionable opinion...a reasonable factfinder could conclude that [Musk]'s allegedly defamatory statements implied assertions of objective fact." *Unsworth v. Musk*, Case No. 2:18-cv-08048-SVW-JC at 11 (C.D. Cal. May 10, 2019). "When billionaires like Elon Musk Tweet, the stock market moves... Because readers rely on social media platforms for real-time news, those platforms have become battlegrounds for nefarious actors' information wars... In today's world, Tweets cannot be categorically pushed into the 'opinion' column for *Cahill* purposes." *BDO USA, LLP v. EverGlade Global, Inc.*, C.A. No. 2021-0244-KSJM at 10-11 (Del. Ch. January 5, 2022). Yet even though Plaintiff submitted proof that Musk's libelous words about him had been taken as fact, the district court concluded that "no reasonable observer would conclude that these words were intended to convey anything other than a personal opinion about Greenspan..." ER-231.

In addition, in its first substantive order on Plaintiff's claims dated June 23, 2021, the district court pointed out that Defendant Musk had not yet been found to have acted with scienter under the PSLRA. Yet on April 1, 2022, in a sealed order later unsealed on or about May 11, 2022, Judge Chen of the Northern District of California found exactly that. "Based on the evidence of record, the Court finds that no reasonable jury could find the statement 'Funding secured' accurate and not

misleading." *In Re Tesla Sec. Litig.*, Case No. 3:18-cv-04865-EMC at 24 (N.D. Cal. April 1, 2022). "The Court now turns to the issue of scienter... The Court concludes that a reasonable jury could reach only one conclusion – i.e., that Mr. Musk recklessly tweeted to the public that funding was secured." *Id*. at 26. Plaintiff brought this ruling to the district court's attention pursuant to Rule 60(b)(5) without delay on May 11, 2022. ER-285. The district court ignored it.

### D. The District Court Was Not Impartial

Judge James Donato knew that his wife's small legal consulting business was being paid by both of the law firms that represented Tesla Defendants during the course of the district court litigation—while his wife advertised her marriage to a sitting federal judge to prospective clients—but did not disclose it.[17] ER-071; ER-073—074. One of those law firms used to employ Judge Donato in a capacity where his name appeared next to Musk's former lead counsel's name on legal filings; Tesla Defendants chose this attorney only after Judge Donato was assigned to the case. ER-218; ER-272. In a ruling on Plaintiff's motion for recusal, Judge Donato did not delegate the motion to another judge, and ruled himself that his prior employment conflict posed no problem, while deliberately omitting mention of the ongoing financial conflict posed by his spouse's work. ER-217—220; ER-

---

[17] If Judge Donato's wife's income is disclosed at all on any of his recent Form AO 10 Financial Disclosure Reports, it is redacted next to the visible word "commissions," and impossible for any litigant to meaningfully discern.

064—074; ER-002.  Any part of this arrangement would make a reasonable person question the impartiality of the district court and the integrity of the judiciary.

The district court erred in declining to recuse itself, in declining to refer the motion for recusal to another judge, and in denying relief pursuant to Rule 60(b)(6).  This Court has the ability to "remand this case for assignment to a different judge."  *United States v. Sears, Roebuck & Co., Inc.*, 785 F. 2d 777, 778 (9th Cir. 1986).

## CONCLUSION

For the foregoing reasons, the PSLRA should be deemed of no further force or effect, the district court's decisions should be reversed, and this Court should remand for assignment to a different judge.

Dated: October 25, 2022

Respectfully submitted,

Aaron Greenspan
956 Carolina Street
San Francisco, CA  94107
Telephone: +1 415 670 9350
Fax: + 1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

## <u>STATEMENT OF RELATED CASES</u>

To the best of my knowledge, there are no related cases.

Dated: October 25, 2022

Respectfully submitted,

Aaron Greenspan
956 Carolina Street
San Francisco, CA 94107
Telephone: +1 415 670 9350
Fax: + 1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

# TABLE OF CONTENTS

### APPELLANT'S ADDENDUM

## No. 22-16110

| No. | Description | A Pages |
|---|---|---|
| 1 | 15 U.S.C. § 78u-4 | 001-017 |
| 2 | 28 U.S.C. § 2072 | 018 |

LII  > U.S. Code  > Title 15  > CHAPTER 2B  **> §78u−4**

# 15 U.S. Code § 78u−4 - Private securities litigation

U.S. Code      Notes

**(a) Private class actions**

**(1) In general**
The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.

**(2) Certification filed with complaint**

**(A) In general**
Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that—

**(i)** states that the plaintiff has reviewed the complaint and authorized its filing;

**(ii)** states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;

**A-001**

**(iii)** states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

**(iv)** sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

**(v)** identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and

**(vi)** states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

## (B) Nonwaiver of attorney-client privilege

The certification filed pursuant to subparagraph (A) shall not be construed to be a waiver of the attorney-client privilege.

### (3) Appointment of lead plaintiff

#### (A) Early notice to class members

##### (i) In general

Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

**(I)** of the pendency of the action, the claims asserted therein, and the purported class period; and

**(II)** that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

##### (ii) Multiple actions

If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).

### (iii) Additional notices may be required under Federal rules

Notice required under clause (i) shall be in addition to any notice required pursuant to the Federal Rules of Civil Procedure.

## (B) Appointment of lead plaintiff

### (i) In general

Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

### (ii) Consolidated actions

If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

### (iii) Rebuttable presumption

#### (I) In general

Subject to subclause (II), for purposes of clause (i), the

**A-003**

court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—

**(aa)** has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

**(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and

**(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

### (II) Rebuttal evidence

The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

**(aa)** will not fairly and adequately protect the interests of the class; or

**(bb)** is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

### (iv) Discovery

For purposes of this subparagraph, discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

### (v) Selection of lead counsel

The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.

### (vi) Restrictions on professional plaintiffs

Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5

**A-004**

securities class actions brought as plaintiff class actions pursuant
to the Federal Rules of Civil Procedure during any 3-year period.

**(4) Recovery by plaintiffs**

The share of any final judgment or of any settlement that is awarded to
a representative party serving on behalf of a class shall be equal, on a
per share basis, to the portion of the final judgment or settlement
awarded to all other members of the class. Nothing in this paragraph
shall be construed to limit the award of reasonable costs and expenses
(including lost wages) directly relating to the representation of the class
to any representative party serving on behalf of a class.

**(5) Restrictions on settlements under seal**

The terms and provisions of any settlement agreement of a class action
shall not be filed under seal, except that on motion of any party to the
settlement, the court may order filing under seal for those portions of a
settlement agreement as to which good cause is shown for such filing
under seal. For purposes of this paragraph, good cause shall exist only
if publication of a term or provision of a settlement agreement would
cause direct and substantial harm to any party.

**(6) Restrictions on payment of attorneys' fees and expenses**

Total attorneys' fees and expenses awarded by the court to counsel for
the plaintiff class shall not exceed a reasonable percentage of the
amount of any damages and prejudgment interest actually paid to the
class.

**(7) Disclosure of settlement terms to class members**

Any proposed or final settlement agreement that is published or
otherwise disseminated to the class shall include each of the
following statements, along with a cover page summarizing the
information contained in such statements:

**(A) Statement of plaintiff recovery**

The amount of the settlement proposed to be distributed to the
parties to the action, determined in the aggregate and on an
average per share basis.

**(B) Statement of potential outcome of case**

**A-005**

**(i) Agreement on amount of damages**

If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement concerning the average amount of such potential damages per share.

**(ii) Disagreement on amount of damages**

If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree.

**(iii) Inadmissibility for certain purposes**

A statement made in accordance with clause (i) or (ii) concerning the amount of damages shall not be admissible in any Federal or State judicial action or administrative proceeding, other than an action or proceeding arising out of such statement.

**(C) Statement of attorneys' fees or costs sought**

If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly summarized on the cover page of any notice to a party of any proposed or final settlement agreement.

**(D) Identification of lawyers' representatives**

The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class.

**(E) Reasons for settlement**

A-006

A brief statement explaining the reasons why the parties are proposing the settlement.

### (F) Other information

Such other information as may be required by the court.

### (8) Security for payment of costs in class actions

In any private action arising under this chapter that is certified as a class action pursuant to the Federal Rules of Civil Procedure, the court may require an undertaking from the attorneys for the plaintiff class, the plaintiff class, or both, or from the attorneys for the defendant, the defendant, or both, in such proportions and at such times as the court determines are just and equitable, for the payment of fees and expenses that may be awarded under this subsection.

### (9) Attorney conflict of interest

If a plaintiff class is represented by an attorney who directly owns or otherwise has a beneficial interest in the securities that are the subject of the litigation, the court shall make a determination of whether such ownership or other interest constitutes a conflict of interest sufficient to disqualify the attorney from representing the plaintiff class.

## (b) Requirements for securities fraud actions

### (1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant—

**(A)** made an untrue statement of a material fact; or

**(B)** omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

### (2) Required state of mind

**(A) In general**

Except as provided in subparagraph (B), in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

**(B) Exception**

In the case of an action for money damages brought against a credit rating agency or a controlling person under this chapter, it shall be sufficient, for purposes of pleading any required state of mind in relation to such action, that the complaint state with particularity facts giving rise to a strong inference that the credit rating agency knowingly or recklessly failed—

**(i)** to conduct a reasonable investigation of the rated security with respect to the factual elements relied upon by its own methodology for evaluating credit risk; or

**(ii)** to obtain reasonable verification of such factual elements (which verification may be based on a sampling technique that does not amount to an audit) from other sources that the credit rating agency considered to be competent and that were independent of the issuer and underwriter.

**(3) MOTION TO DISMISS; STAY OF DISCOVERY**

**(A) Dismissal for failure to meet pleading requirements**

In any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.

**(B) Stay of discovery**

In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

**A-008**

### (C) Preservation of evidence

#### (i) In general

During the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

#### (ii) Sanction for willful violation

A party aggrieved by the willful failure of an opposing party to comply with clause (i) may apply to the court for an order awarding appropriate sanctions.

### (D) Circumvention of stay of discovery

Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.

### (4) LOSS CAUSATION

In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

## (c) SANCTIONS FOR ABUSIVE LITIGATION

### (1) MANDATORY REVIEW BY COURT

In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

**A-009**

**(2) MANDATORY SANCTIONS**

If the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

**(3) PRESUMPTION IN FAVOR OF ATTORNEYS' FEES AND COSTS**

### (A) In general

Subject to subparagraphs (B) and (C), for purposes of paragraph (2), the court shall adopt a presumption that the appropriate sanction—

**(i)** for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and

**(ii)** for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.

### (B) Rebuttal evidence

The presumption described in subparagraph (A) may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that—

**(i)** the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or

**(ii)** the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.

**A-010**

### (C) Sanctions

If the party or attorney against whom sanctions are to be imposed meets its burden under subparagraph (B), the court shall award the sanctions that the court deems appropriate pursuant to Rule 11 of the Federal Rules of Civil Procedure.

### (d) DEFENDANT'S RIGHT TO WRITTEN INTERROGATORIES

In any private action arising under this chapter in which the plaintiff may recover money damages, the court shall, when requested by a defendant, submit to the jury a written interrogatory on the issue of each such defendant's state of mind at the time the alleged violation occurred.

### (e) LIMITATION ON DAMAGES

#### (1) IN GENERAL

Except as provided in paragraph (2), in any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

#### (2) EXCEPTION

In any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

#### (3) "MEAN TRADING PRICE" DEFINED

A-011

For purposes of this subsection, the "mean trading price" of a security shall be an average of the daily trading price of that security, determined as of the close of the market each day during the 90-day period referred to in paragraph (1).

**(f) PROPORTIONATE LIABILITY**

**(1) APPLICABILITY**

Nothing in this subsection shall be construed to create, affect, or in any manner modify, the standard for liability associated with any action arising under the securities laws.

**(2) LIABILITY FOR DAMAGES**

**(A) Joint and several liability**

Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws.

**(B) Proportionate liability**

**(i) In general**

Except as provided in subparagraph (A), a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person, as determined under paragraph (3).

**(ii) Recovery by and costs of covered person**

In any case in which a contractual relationship permits, a covered person that prevails in any private action may recover the attorney's fees and costs of that covered person in connection with the action.

**(3) DETERMINATION OF RESPONSIBILITY**

**(A) In general**

In any private action, the court shall instruct the jury to answer special interrogatories, or if there is no jury, shall make findings, with respect to each covered person and each of the other

**A-012**

persons claimed by any of the parties to have caused or contributed to the loss incurred by the plaintiff, including persons who have entered into settlements with the plaintiff or plaintiffs, concerning—

**(i)** whether such person violated the securities laws;

**(ii)** the percentage of responsibility of such person, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the plaintiff; and

**(iii)** whether such person knowingly committed a violation of the securities laws.

### (B) Contents of special interrogatories or findings

The responses to interrogatories, or findings, as appropriate, under subparagraph (A) shall specify the total amount of damages that the plaintiff is entitled to recover and the percentage of responsibility of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs.

### (C) Factors for consideration

In determining the percentage of responsibility under this paragraph, the trier of fact shall consider—

**(i)** the nature of the conduct of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs; and

**(ii)** the nature and extent of the causal relationship between the conduct of each such person and the damages incurred by the plaintiff or plaintiffs.

### (4) UNCOLLECTIBLE SHARE

### (A) In general

Notwithstanding paragraph (2)(B), upon[1] motion made not later than 6 months after a final judgment is entered in any private action, the court determines that all or part of the share of the judgment of the covered person is not collectible against that covered person, and is also not collectible against a covered

**A-013**

person described in paragraph (2)(A), each covered person described in paragraph (2)(B) shall be liable for the uncollectible share as follows:

### (i) Percentage of net worth

Each covered person shall be jointly and severally liable for the uncollectible share if the plaintiff establishes that—

**(I)** the plaintiff is an individual whose recoverable damages under the final judgment are equal to more than 10 percent of the net worth of the plaintiff; and

**(II)** the net worth of the plaintiff is equal to less than $200,000.

### (ii) Other plaintiffs

With respect to any plaintiff not described in subclauses (I) and (II) of clause (i), each covered person shall be liable for the uncollectible share in proportion to the percentage of responsibility of that covered person, except that the total liability of a covered person under this clause may not exceed 50 percent of the proportionate share of that covered person, as determined under paragraph (3)(B).

### (iii) Net worth

For purposes of this subparagraph, net worth shall be determined as of the date immediately preceding the date of the purchase or sale (as applicable) by the plaintiff of the security that is the subject of the action, and shall be equal to the fair market value of assets, minus liabilities, including the net value of the investments of the plaintiff in real and personal property (including personal residences).

## (B) Overall limit

In no case shall the total payments required pursuant to subparagraph (A) exceed the amount of the uncollectible share.

## (C) Covered persons subject to contribution

A covered person against whom judgment is not collectible shall be subject to contribution and to any continuing liability to the plaintiff on the judgment.

**(5)** RIGHT OF CONTRIBUTION

To the extent that a covered person is required to make an additional payment pursuant to paragraph (4), that covered person may recover contribution—

**(A)** from the covered person originally liable to make the payment;

**(B)** from any covered person liable jointly and severally pursuant to paragraph (2)(A);

**(C)** from any covered person held proportionately liable pursuant to this paragraph who is liable to make the same payment and has paid less than his or her proportionate share of that payment; or

**(D)** from any other person responsible for the conduct giving rise to the payment that would have been liable to make the same payment.

**(6)** NONDISCLOSURE TO JURY

The standard for allocation of damages under paragraphs (2) and (3) and the procedure for reallocation of uncollectible shares under paragraph (4) shall not be disclosed to members of the jury.

**(7)** SETTLEMENT DISCHARGE

**(A) In general**

A covered person who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons. Upon entry of the settlement by the court, the court shall enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action. The order shall bar all future claims for contribution arising out of the action—

**(i)** by any person against the settling covered person; and

**(ii)** by the settling covered person against any person, other

**A-015**

than a person whose liability has been extinguished by the settlement of the settling covered person.

### (B) Reduction

If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of—

**(i)** an amount that corresponds to the percentage of responsibility of that covered person; or

**(ii)** the amount paid to the plaintiff by that covered person.

### (8) CONTRIBUTION

A covered person who becomes jointly and severally liable for damages in any private action may recover contribution from any other person who, if joined in the original action, would have been liable for the same damages. A claim for contribution shall be determined based on the percentage of responsibility of the claimant and of each person against whom a claim for contribution is made.

### (9) STATUTE OF LIMITATIONS FOR CONTRIBUTION

In any private action determining liability, an action for contribution shall be brought not later than 6 months after the entry of a final, nonappealable judgment in the action, except that an action for contribution brought by a covered person who was required to make an additional payment pursuant to paragraph (4) may be brought not later than 6 months after the date on which such payment was made.

### (10) DEFINITIONS

For purposes of this subsection—

**(A)** a covered person "knowingly commits a violation of the securities laws"—

**(i)** with respect to an action that is based on an untrue statement of material fact or omission of a material fact necessary to make the statement not misleading, if—

**(I)** that covered person makes an untrue statement of a material fact, with actual knowledge that the representation

**A-016**

is false, or omits to state a fact necessary in order to make the statement made not misleading, with actual knowledge that, as a result of the omission, one of the material representations of the covered person is false; and

**(II)** persons are likely to reasonably rely on that misrepresentation or omission; and

**(ii)** with respect to an action that is based on any conduct that is not described in clause (i), if that covered person engages in that conduct with actual knowledge of the facts and circumstances that make the conduct of that covered person a violation of the securities laws;

**(B)** reckless conduct by a covered person shall not be construed to constitute a knowing commission of a violation of the securities laws by that covered person;

**(C)** the term "covered person" means—

**(i)** a defendant in any private action arising under this chapter; or

**(ii)** a defendant in any private action arising under section 77k of this title, who is an outside director of the issuer of the securities that are the subject of the action; and

**(D)** the term "outside director" shall have the meaning given such term by rule or regulation of the Commission.

(June 6, 1934, ch. 404, title I, §21D, as added and amended Pub. L. 104–67, title I, §101(b), title II, §201(a), Dec. 22, 1995, 109 Stat. 743, 758; Pub. L. 105–353, title I, §101(b)(2), title III, §301(b)(13), Nov. 3, 1998, 112 Stat. 3233, 3236; Pub. L. 111–203, title IX, §933(b), July 21, 2010, 124 Stat. 1883.)

**A-017**

LII  > U.S. Code  > Title 28  > PART V  > CHAPTER 131  **> §2072**

# 28 U.S. Code § 2072 - Rules of procedure and evidence; power to prescribe

U.S. Code    Notes

**(a)** The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

**(b)** Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

**(c)** Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

(Added Pub. L. 100–702, title IV, §401(a), Nov. 19, 1988, 102 Stat. 4648; amended Pub. L. 101–650, title III, §§315, 321, Dec. 1, 1990, 104 Stat. 5115, 5117.)

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,100 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface, 14-point Times, using Microsoft Word for Mac 16.66.1.

3.      I further certify that the electronic copy of this brief filed with the Court is or will be identical in all respects except the signature to the hard copy filed with the Court, and that the electronic version is free of viruses or malicious software.


Dated: October 25, 2022

Aaron Greenspan